# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAELA CERVANTES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:16-cv-00215-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Micaela Cervantes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes with neuropathy, varicose veins, arthritis in both knees, obesity, tendonitis in the left shoulder, chronic pain syndromes, myalgias, degenerative disc disease of the lumbar spine with radiculopathy, cervical spine sprain or strain, depression, anxiety, and a panic disorder.  For the reasons set forth below, Plaintiff's motion to remand shall

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 4, 5.)

1

1  be denied and Defendant's motion for summary judgment shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 20, 2013. (AR 60.) Plaintiff's applications were initially denied on August 16, 2013, and denied upon reconsideration on November 1, 2013. (AR 75-79, 83-87.) Plaintiff requested and received a hearing before Administrative Law Judge Timothy S. Snelling ("the ALJ"). Plaintiff appeared for a hearing on June 20, 2014. (AR 24-48.) On August 22, 2014, the ALJ found that Plaintiff was not disabled. (AR 8-19.) The Appeals Council denied Plaintiff's request for review on December 15, 2015. (AR 1-3.)

### A.     Hearing Testimony

Plaintiff testified at the June 20, 2014 hearing with the assistance of a Spanish language interpreter. (AR 26.) Plaintiff was previously denied benefits in a 2006 decision. (AR 28.) After she was denied benefits, Plaintiff tried to return to work. (AR 37.) Her condition was getting worse and she could not work. (AR 37.) Kneeling and walking were worse. (AR 37.)

Plaintiff was 54 years old on the date of the hearing. (AR 31.) Plaintiff completed the sixth grade in Mexico. (AR 31.) Plaintiff has been in the United States for 32 years. (AR 31.) Plaintiff is right handed. (AR 36.) Plaintiff has a driver's license and does drive. (AR 40.)

Plaintiff stopped working as a janitor on December 10, 2011, because she was having a lot of pain and could not do the work anymore. (AR 32.) Plaintiff was doing heavy work in hospitals. (AR 32.) She was unable to do heavy lifting and could not walk or stand for a long time. (AR 32.) Her doctor told her it was arthritis and gave her medication. (AR 33.) The medication helped a little at first but then it did not help. (AR 33.) Plaintiff is an insulin dependent diabetic and follows a strict diet. (AR 33.) She checks her blood sugar three times per day. (AR 33.)

Plaintiff tries to walk for exercise and her feet get very swollen if she does not move. (AR 33.) Plaintiff is able to stand and walks slowly with difficulty. (AR 34.) Plaintiff does not move a lot because she is home alone and has fallen. (AR 34.) She fell because her feet hurt and

1  she could not move. (AR 34.) Plaintiff can walk from 15 to 20 minutes before needing to take a
2  break. (AR 34.) Plaintiff was told by her doctor that she needs to walk. (AR 34.) She had lost
3  sixty pounds in the preceding eight to ten months. (AR 34.)

4  Plaintiff's appetite has decreased, but her diabetes has not improved. (AR 35.) She has
5  arthritis in her shoulders, back, hips, feet, hands, all over her body. (AR 35.) Plaintiff can stand
6  for thirty minutes, and then needs to rest before she stands for another thirty minutes. (AR 37.)
7  Plaintiff has to keep moving. (AR 37.) Plaintiff is able to stand for thirty minutes six or seven
8  times per day. (AR 38.) Plaintiff cannot walk because of her condition. (AR 38.) Plaintiff
9  cannot do a job that requires sitting because of her pain. (AR 38.) Plaintiff's pain gets worse
10 throughout the day. (AR 38.)

11  Plaintiff is most comfortable at the end of the day when she sits down with her legs
12 elevated. (AR 38.) The doctor told her to elevate her feet three to four times a day for fifteen
13 minutes. (AR 38.) Plaintiff has to go to the bathroom twice per hour. (AR 39.)

14  Plaintiff has been seeing a psychologist. (AR 35.) When she is in pain her depression
15 and anxiety get worse. (AR 35.) Plaintiff takes morphine three times per day. (AR 35.)
16 Plaintiff takes the morphine before she walks and without the medication she would not be able
17 to walk. (AR 35.) Plaintiff has been taking morphine for eight months. (AR 39.) She takes
18 Motrin in between her doses of morphine. (AR 40.) Her pain is the same in both shoulders but
19 she feels it more in the right. (AR 35.)

20  Plaintiff's pain increases with all activity, even when she does not do any activity. (AR
21 36.) Plaintiff has anxiety one or two times per day. (AR 36.) Plaintiff takes medication that
22 helps her and uses tea that relaxes her. (AR 36.)

23  Plaintiff does physical therapy exercises at home. (AR 36.) Plaintiff received injections
24 in her shoulders and knees. (AR 37.) Plaintiff expressed her pain as a level seven and a half
25 during the hearing. (AR 41.) When the morphine is at optimal level her pain is a five. (AR 41.)
26 The doctor has been increasing her level of morphine. (AR 41.) The morphine works better than
27 other pain medications she has taken in the past. (AR 41.) Plaintiff gets thirsty and sleepy from
28 the morphine. (AR 42.) The morphine also makes her have to go to the bathroom a lot. (AR

42.)

A vocational expert ("VE"), George Meyers also testified at the hearing.  (AR 43-46.)

**B.   ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2013.
- Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 10, 2011 through her date last insured of September 30, 2013.
- Through the date last insured, and during the period adjudicated, Plaintiff had the following medically severe combination of impairments: diabetes with neuropathy, varicose veins, arthritis in both knees, obesity, tendonitis in the left shoulder, chronic pain syndromes, myalgias, degenerative disc disease of the lumbar spine with radiculopathy, cervical spine sprain or strain, depression, anxiety, and a panic disorder.
- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- Through the date last insured, Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c): Plaintiff cannot climb ladders, ropes, or scaffolds, but can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs. Plaintiff can frequently stoop.  Moreover Plaintiff must avoid concentrated exposure to temperature extremes.
- Through the date last insured, Plaintiff was capable of performing past relevant work as a home attendant (354.377-014, medium performed at light, svp 3), cleaner/housekeeper (323.687-014. Light, svp 2), and marker (209.587-034, light, svp 2).  This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.
- Plaintiff not under a disability, as defined in the Social Security Act, at any time from December 10, 2011, the alleged onset date, through September 30, 2013, the date last insured.

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises four issues on appeal: 1) the ALJ erred in failing to address lay witness evidence; 2) the ALJ summarily found Plaintiff did not meet or equal a listing without providing an explanation of why the listings are not met; 3) the ALJ did not consider the side effects of Plaintiff's medications; and 4) Plaintiff should be found disabled due to her age and illiteracy.

### A. Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to address the lay witness testimony of her son. Defendant concedes that the ALJ erred by failing to address the lay witness testimony but argues that it was harmless error because of the reasons the ALJ provided to reject Plaintiff's credibility. Plaintiff responds that the reasons provided to reject Plaintiff's credibility are not germane to her son's testimony.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053; 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v.

6

1  Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must give specific reasons germane to
2  the witness in discounting the lay witness testimony.  Stout, 454 F.3d at 1056.  However, the
3  ALJ's decision may not be reversed if any error is harmless.  Molina v. Astrue, 674 F.3d 1104,
4  1114 (9th Cir. 2012).

5        While the ALJ must give reasons that are germane to each witness to reject third party
6  testimony, the Ninth Circuit has not required the ALJ to discuss every witnesses' testimony on
7  an individualized basis.  Molina, 674 F.3d at 1114.  Where the ALJ gives germane reasons to
8  reject the testimony of one witness, the ALJ need only point to those reasons in rejecting the
9  testimony of the second witness.  Id.  Where the ALJ gives reasons for rejecting the claimant's
10 testimony that are equally relevant to similar testimony provided by lay witnesses, that would
11 support a finding that the lay witness testimony is similarly not credible.  Valentine v. Comm'r
12 Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

13       Where a claimant alleges that the ALJ failed to consider additional evidence, the
14 harmless error rule applies.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).  The
15 reviewing court can determine from the "circumstances of the case whether further
16 administrative review is necessary to determine whether there was prejudice from the error."
17 McLeod, 640 F.3d at 888.  Mere probability of error is not enough.  Id.  "But where the
18 circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so
19 that the agency can decide whether re-consideration is necessary.  By contrast, where
20 harmlessness is clear and not a borderline question, remand for reconsideration is not
21 appropriate."  Id. (internal punctuation and citations omitted).

22       1.    <u>Third Party Witness and Plaintiff's Testimony are Substantially Similar</u>

23       The ALJ considered the third party function report completed by Plaintiff's son and the
24 function report completed by Plaintiff.  (AR 16.)  While the ALJ considered the testimony of the
25 third party, he did not provide any reasons to discount the testimony.

26       Plaintiff's son, Juan Cervantes, completed a third party function report on July 23, 2013.
27 (AR 152-60.)  Mr. Cervantes stated that he spends every evening with his mother after work and
28 they watch television and go to the stores.  (AR 152.)  Plaintiff is in pain all the time because of

7

1  her arthritis. (AR 152.) Plaintiff sits for thirty minutes in the living room after she wakes up and
2  then takes his younger siblings to school. (AR 153.) She does chores around the house but has
3  to take breaks. (AR 153.) Plaintiff sometimes feels pain during the night, especially when she
4  does not cover her legs. (AR 153.) Plaintiff has problems dressing herself and cannot reach
5  down to clean her legs and feet. (AR 153.) Sometimes his sister helps her brush her hair. (AR
6  153.) She has trouble sitting on the toilet. (AR 153.) Plaintiff does not need reminders for self-
7  care or to take her medication. (AR 154.)

8        Plaintiff is unable to prepare her own meals because the pain does not allow her to stand
9  to be able to cook. (AR 154.) Plaintiff cleans and does the laundry with five minute breaks in
10 between. (AR 154.) Plaintiff goes outside once per day and does drive. (AR 155.) Her son
11 usually accompanies her when she goes out. (AR 155.) Plaintiff goes shopping for groceries
12 once a week for an hour and a half. (AR 155.) Plaintiff is able to handle finances. (AR 155.)
13 Plaintiff watches television, reads, and takes walks daily. (AR 156.) There have been no
14 changes in these activities since her conditions began. (AR 156.) Plaintiff talks on the phone
15 with family members three times per week and attends church every Sunday for one hour. (AR
16 156.) Plaintiff has had no change in her social activities since her conditions began. (AR 157.)

17       Plaintiff can only lift eight pounds and cannot squat or bend or kneel. (AR 157.)
18 Plaintiff can stand for thirty minutes at one time. (AR 157.) Plaintiff is unable to reach. (AR
19 156.) She can walk for 20 to 25 minutes. (AR 157.) She is able to climb stairs slowly. (AR
20 157.) She has pain in her fingers when using her hands. (AR 157.) Plaintiff is always able to
21 pay attention and follows instructions very well. (AR 157.) Plaintiff gets along well with
22 authority figures and handles stress "sort of well." (AR 158.) She handles changes in routine
23 "alright." (AR 158.) Plaintiff uses a cane and walker as needed. (AR 158.) Her pain is worse
24 in the winter. (AR 159.)

25       On July 30, 2013, Plaintiff completed an adult function report. (AR 175-183.) Plaintiff
26 walks up and sits for fifteen to twenty minutes and then makes breakfast, does light house work.
27 (AR 176.) She watches television, takes her children to school, and reads for a bit. (AR 176.)
28 Plaintiff's daughter helps her get dressed and brushes her hair. (AR 176.) Plaintiff needs help

bathing because she cannot bend, but has no problems using the toilet. (AR 176.) Plaintiff does not need reminders to take care of her personal needs or to take her medication. (AR 177.)

Plaintiff prepares her own meals. (AR 177.) Plaintiff washes dishes, wipes down the counters, and does any chore that does not require her to stoop or bend. (AR 177.) Plaintiff's children do all the heavy housework, including laundry. (AR 177.) Plaintiff goes outside often, taking her children to school daily. (AR 178.) Plaintiff drives but her family does not want her to go out by herself. (AR 178.) Plaintiff shops for groceries, basic necessities, and clothing. (AR 178.) She goes grocery shopping once a week for about an hour. (AR 178.) Plaintiff has no problems handling finances. (AR 178.)

Plaintiff reads, watches television, and walks on a daily basis. (AR 179.) Plaintiff spends time with her family daily. (AR 179.) She goes to the grocery store regularly and to church once a week. (AR 179.)

Plaintiff can only lift six pounds, and can walk for twenty to thirty minutes. (AR 180.) Plaintiff starts what she finishes and can follow instructions without difficulty. (AR 180.) Plaintiff gets along well with authority figures. (AR 181.) Plaintiff does not handle stress well, but does handle changes in routine well. (AR 181.) Plaintiff uses a walker when she is alone and a cane when she has someone with her. (AR 181.) Plaintiff takes medication but they do not cause any side effects. (AR 182.)

Review of the evidence considered by the ALJ shows that the reports are substantially similar, although the third party report is somewhat more restrictive. For example, the third party report states that Plaintiff is unable to prepare meals for herself because she cannot stand due to pain, (AR 154), while Plaintiff states that she prepares her own meals and makes breakfast (AR 176, 177.)

    2.    <u>The ALJ Provided Clear and Convincing Reasons to Find Plaintiff's Complaints Not Credible That are Supported By Substantial Evidence in the Record</u>

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or

symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found that Plaintiff reports to "experience constant pain, slept poorly, had difficulty with all activities including dressing and bathing herself, performed tasks in small increments with breaks in between, and could lift only 8 pounds, stand 30 minutes at a time, and

walk for 20 to 25 minutes and standing 30 minutes at a time, but handled stress and changes in routine adequately, followed instructions well, shopped for groceries for an hour once per week, and took her children to school on a daily basis. (AR 16.) The ALJ also considered that Plaintiff "testified severe diffuse pain due to arthritis limited all exertion, including walking no more than 15 to 20 minutes at a time, and exacerbated her depression and anxiety. She also endorsed diabetes mellitus and frequent urination. She took Motrin and Morphine for her pain, but her medication makes her thirsty and sleepy." (AR 16.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. She did not seek treatment with a frequency or consistency commensurate with the alleged severity of her symptoms. Further, her own physician suspected she exaggerated her symptoms. (AR 16.)

The ALJ found that although Plaintiff had reported left shoulder pain for a year, her February 4, 2011 x-ray showed no abnormalities. (ECF No. 16, 261, 539.) Plaintiff underwent physical therapy, but reported no improvement. (AR 16, 253, 268, 271, 275, 278.) On June 20, 2011, Plaintiff's physician "thought it was very strange that she isn't improving and that [he] had no explanation for it," pursuant to which he refused to extend her disability past June 28. (Ex. 16, 611). On July 12, 2011, Dr. Shelat noted that Plaintiff's MRI showed only mild arthritis and some calcific tendonitis in the shoulder. (AR 16, 289.). Plaintiff demanded an extension of her time off work and became very angry when her physician refused, saying "Give me some disability so I can pay my bills" and told him she was going to fire him. (AR 16, 289, 290.)

Plaintiff's treating physician stated,

> I was very concerned about this pt's credibility because, per the physical therapist, she was showing significant tenderness with the mildest palpation during physical therapy and canceling appointments with the orthopedists for the several months. She mentioned a few months ago that she had an argument with her boss and that he was about to fire her over something silly and a few days after that, her right shoulder started hurting. Then it somehow got better and then her left shoulder started hurting and hasn't gotten any better despite shots and weeks of therapy.

(AR 16, 290.) The physician added that "the case didn't add up in my mind." (AR 16, 289-90.)

11

The ALJ also noted that both Plaintiff's primary physician and an orthopedic surgeon agreed "that this pt was not going to have any problem returning to work at full duty ... due to her left shoulder based on her MRI results and clinical history. (AR 16, 631.) The ALJ also found that in August, Plaintiff lied to her new physician that the orthopedist had told her she needed surgery (AR 16.) For these reasons and because the subsequent evidence showed inconsistent complaints and treatment, the ALJ found that Plaintiff misrepresents her condition for the purpose of secondary gain. (AR 16.)

The ALJ also considered that "In December, she complained of bilateral knee pain, varicose veins, and ongoing shoulder pain, but did not mention neck pain. She admitted regular activities did not cause pain, but prolonged walking did (Ex. 6F209)." (AR 17.) Plaintiff "did not complain of pain again until June 2012, when she reported bilateral shoulder and knee pain that limited her to standing and walking no more than 15 minutes (ex. 6F230). She returned in October, complaining of multiple joint aches that worsened with changes in the weather. She purportedly had great difficulty even getting out of bed or walking more than 30 minutes (Ex. 6F251 ). She continued to complain of diffuse pain through the end of 2012 and requested permanent disability (Ex. 6F270 and 274)." (AR 17.)

The ALJ also cited the medical evidence in determining that Plaintiff was not credible. In July of 2013, Plaintiff "reported recurrent left leg weakness and tingling in the feet as well as chronic knee pain from arthritis, calcific tendonitis, and low back pain [AR 418]. She was diagnosed with lumbar radiculopathy (Ex. 8F13)." (AR 16.) An MRI on August 23, 2013, however, showed only a small nerve pinch on the right side, not the left [AR 421, 881], leaving no explanation for her left leg symptoms." (AR 17.)

The ALJ further found that the objective medical evidence does not support the severity of Plaintiff's alleged symptoms and that the medical record demonstrated that her condition had improved to the point that she was clearly not disabled. (AR 18.) She could lift and carry all but very heavy items and walked regularly. (AR 18, 879, 901.) The ALJ found Plaintiff not credible. (AR 18.)

The claimant's own physician refused to extend her disability and questioned her

ongoing complaints of pain, prompting her to fire him and find one whom she could dupe. The evidence indicates she improved significantly with treatment, including feeling 95% better in November 2013. Finally, she did not seek treatment consistently or as frequently as indicated by the alleged severity of her symptoms. Her complaints varied from appointment to appointment and at times she went several months between complaints of pain.

(AR 18.)

Plaintiff does not challenge the credibility finding and the ALJ provided clear and convincing reasons to support the credibility finding that are supported by substantial evidence in the record.

### 3. The ALJ's Failure to Address Third Party Testimony is Harmless

Plaintiff relies on Stout, 454 F.3d 1050, to argue that any error in addressing the third party witness testimony is reversible error. However, in Stout the Ninth Circuit found that the error in failing to address the third party witness testimony was not harmless. 454 F.3d at 1056. The testimony which the ALJ did not address was uncontradicted and if believed supported the conclusion that the plaintiff would need a special working environment that could result in a finding that would preclude the plaintiff form returning to gainful employment. Id.

Plaintiff does not argue that the error was harmful, but contends that the case must be reversed because the ALJ did not give germane reasons to reject the testimony. In this instance, the Court finds that due to the reasons provided to reject Plaintiff's testimony, any error in failing to provide reasons germane to her son's testimony would be harmless. The failure to address the testimony of the third party is harmless only where the court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Plaintiff does not point to any testimony provided by Plaintiff's son that, if credited, would establish disability. Unlike the third party witness in Stout, the testimony is contradicted by Plaintiff's treating physician who determined that Plaintiff was able to perform fulltime work. (AR 621.) Further, the Court finds that, based upon the record and given the reasons for rejecting Plaintiff's testimony which would also apply to the third party testimony, no reasonable ALJ would credit her son's testimony which in some instances suggests she is more limited in

her daily activities than she testifies. Accordingly, the Court finds that the ALJ's failure to provide germane reasons to reject the testimony of Juan Cervantes was harmless error. See Melton v. Astrue, 895 F. Supp. 2d 1054, 1060 (D. Or. 2012) (finding failure to address third party testimony to be harmless); Rabadi v. Astrue, 283 F. App'x 521, 523 (9th Cir. 2008) (finding harmless error where same objective reasons to reject the claimant's testimony support a decision not to credit family member testimony).

**B.     ALJ Did Not Err in Finding Plaintiff Did Not Meet or Equal Listing**

Plaintiff argues that the ALJ erred by summarily finding that Plaintiff did not meet or equal a listing. Defendant contends that Plaintiff has failed to argue with specificity any alleged error at step three and has therefore waived this argument. Further, Defendant states that the ALJ adequately met his burden at step three and the evaluation of the medical evidence is an adequate statement upon which the ultimate factual conclusions are based.

At step three in the sequential process, the ALJ is to determine if the claimant has an impairment that meets or equals one of a list of specific impairments described in the regulations. 20 C.F.R. § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). "The Secretary does not consider a claimant's impairment to be one listed in Appendix I solely because it has the diagnosis of a listed impairment." Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)). The ALJ is required to review the symptoms and make specific findings essential to the conclusion. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). "An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." Id. However, the ALJ need not state why a claimant failed to satisfy every different section of the listings. Id. at 1201. The ALJ's evaluation of the evidence can be "an adequate statement of the 'foundations on which the ultimate factual conclusions are based.' " Id.

To meet a listing, an impairment "must also have the findings shown in the Listing of that impairment." Marcia, 900 F.2d at 175. "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To

equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

In Marcia, the plaintiff argued that the ALJ's finding at step three was insufficient to show that the ALJ actually considered whether the medical evidence equaled a listed impairment. 900 F.2d at 176. The ALJ's finding as to medical equivalence was that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act . . . ." Marcia, 900 F.2d at 176. The Ninth Circuit found that this was insufficient and held that "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Id. Subsequently, in Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001), the Ninth Circuit held that an ALJ's discussion and evaluation of the evidence to support his conclusion was sufficient even if not discussed under the relevant section of the ALJ's report.

The Ninth Circuit has also held that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting Burch, 400 F.3d at 683). Here, although the ALJ did not discuss the medical evidence in detail at step three before determining Plaintiff did not meet the listing requirements gave an evaluation of the medical record between steps three and four in support of the RFC determination. (AR 13-17.) See Lewis, 236 F.3d at 513. The ALJ found that review of the evidence does not show that Plaintiff's physical impairments meet or equal a listing. (AR 14.)

In considering Plaintiff's RFC, the ALJ addressed Plaintiff's treating physician's opinion that he could find no reason for Plaintiff's failure to improve with physical therapy and the orthopedist opinion that based upon MRI results from her shoulder and clinical history, Plaintiff was able to return to work fulltime. (AR 16, 289-90, 539, 621, 631.) Plaintiff's diabetes was stable. (AR 16, 434, 892, 910, 929, 969.) An x-ray of her lumbar spine showed only mild

degenerative disc disease and mild hypertrophy. (AR 17, 752.) In May 2013, examination revealed only minimal edema and mild varicosities in the legs. (AR 17, 407.) An August 23, 2013, MRI revealed only a small pinched nerve on the right side. (AR 17, 421, 881.) In February 2014, x-rays of Plaintiff's knees showed only mild osteoarthritic changes in the left knee. (AR 18, 931.) A May 14, 2014 ultrasound did not show deep venous thrombosis. (AR 18, 971.)

Finally, Plaintiff does not identify any listing that the ALJ should have found was met nor does she offer any theory as to how her impairments would combine to equal a listed impairment. See Lewis, 236 F.3d at 514 (plaintiff did not show that ALJ erred in concluding that medical conditions did not equal a listed impairment). At the June 20, 2014 hearing, Plaintiff argued that she gridded out based on her age and because she would be limited to light work. (AR 28-29.) Therefore, Plaintiff has not met her burden of demonstrating that her symptoms meet or equal the criteria for a listing or that the ALJ erred. See Kennedy, 738 F.3d at 1178 (quoting Burch, 400 F.3d at 683). The Court finds that the ALJ did not err at step three.

### C. The ALJ Properly Considered Plaintiff's Medication Side Effects

Plaintiff next argues that the ALJ erred by failing to consider the side effects of Plaintiff's medication. Defendant argues that the ALJ properly considered the side effects of Plaintiff's medication and they were accounted for in the RFC.

The ALJ considered Plaintiff's medication side effects in determining her difficulties with concentration, persistence, and pace and found that she had mild difficulties. (AR 14.) The ALJ found that nothing in the treatment records indicate that she had any deficit in this area due to a mental impairment, although Plaintiff did endorse some drowsiness from her pain medication. (AR 14.)

Since the ALJ found that the treatment records do not indicate that Plaintiff had any deficit in the area of concentration, persistence, or pace, the mild finding was necessarily due to the ALJ's consideration of Plaintiff's complaints of drowsiness.

Plaintiff argues that at the hearing, the VE testified that a person who needed additional rest breaks would not be able to maintain employment, but the ALJ did not find that Plaintiff

would need additional rest breaks. The ALJ found that Plaintiff's medication side effects caused mild limitation in her concentration, persistence, and pace. (AR 14.) On March 4, 2013, Plaintiff sought treatment for anxiety and grief related to the death of her sister two years earlier. (AR 17, 459-462.) Plaintiff's behavior was normal and tearful; her demeanor was pleasant and cooperative. (AR 461.) Speech was normal and mood was euthymic[2] and anxious. (AR 461.) Affect was full range and appropriate. (AR 461.) Plaintiff's thought process was logical; and thought content was normal. (AR 461.) Plaintiff was fully oriented and attention and concentration were within normal limits. (AR 461.) Recent and remote memory were intact, and fund of knowledge was normal. (AR 461.) Plaintiff was diagnosed with anxiety and a GAF of 51-60 indicating moderate symptoms. (AR 17, 461.)

On March 21, 2013, Plaintiff reported her anxiety had decreased in severity and she was assessed with a GAF of 61-70 indicating mild symptoms. (AR 17, 465.) On April 9, 2013, Plaintiff had a normal evaluation and a GAF of 61-70. (AR 470-471.) Concentration and attention were found to be normal and memory was intact. (AR 470.) The ALJ also considered that during an interview on July 2, 2013, it was reported that Plaintiff had no problems with understanding, coherency, concentrating, talking, answering, seeing, or writing. (AR 15, 186.) Substantial evidence supports the ALJ's findings that Plaintiff did not have any any deficit in concentration, persistence and pace due to a mental impairment.

Reviewing the RFC, the ALJ found that Plaintiff can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders, ropes, and scaffolds. (AR 15.) The ALJ properly considered Plaintiff's mild limitations due to her medication side effects and incorporated them into the RFC. The ALJ did not err in considering Plaintiff's medication side effects.

### D. Age and Illiteracy

Finally, Plaintiff argues that Plaintiff should be found disabled due to her age and illiteracy. Plaintiff contends that due to her arthritis and age Plaintiff should be found disabled

---

[2] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

under Grid Rule 202.02. Defendant responds that Plaintiff did not meet her burden of demonstrating disability and inability to perform her past relevant work. Plaintiff does not address this argument in her reply brief.

In determining whether an individual is disabled, the ALJ will refer to the grids. Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). "The grids correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled." Cooper, 880 F.2d at 1155.

Rule 202.00(c) provides that

> for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. § Pt. 404, Subpt. P, App. 2.

Plaintiff is seeking for the Court to find that Plaintiff is limited to light work and remand for benefits. However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679. Notable in this instance is that no treating physician has opined that Plaintiff has any limitations and the test results show generally mild findings. The treating opinion evidence in the record is Dr. Shelat's opinion that he and the orthopedic surgeon, Dr. Breckerfield, agree that Plaintiff would not have any problems returning to full duty based on her MRI results and clinical history. (AR 631, 621.) While a finding that Plaintiff was of advanced age and limited to light work would, under the grids, require a finding that Plaintiff was disabled, in this action the ALJ determined that Plaintiff could perform medium work and was capable of performing her past relevant work. (AR 15, 18.)

The VE opined that an individual who was restricted to medium work with no climbing of ladders, ropes or scaffolding but other postural activities could be performed on an occasional

basis except the individual could frequently stoop would be able to perform Plaintiff's past relevant work as performed and as performed in the national economy. (AR 44-45.) The ALJ's decision is supported by substantial evidence in the record.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion to remand is DENIED, and Defendant's motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Micaela Cervantes. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **March 21, 2017**

UNITED STATES MAGISTRATE JUDGE